UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| MY HOME NOW, LLC, | Case No. 2:14-CV-2019 JCM (VCF) |
| Plaintiff(s), | ORDER |
| v. | |
| CITIBANK, N.A., et al., | |
| Defendant(s). | |

Presently before the court is plaintiff My Home Now, LLC's ("My Home Now") renewed motion for summary judgment. (ECF No. 45). Defendant Citibank, N.A. ("Citibank") filed a response and renewed cross-motion for summary judgment (ECF No. 48), to which My Home Now replied (ECF No. 51).

**I.    Facts**

The present case involves a dispute over real property located at 5381 Cholla Cactus Avenue, Las Vegas, NV 89141, APN#176-25-816-132 (the "property"). (ECF No. 45).

In June 2007, Stephanie Osborn ("Osborn") purchased the property. *Id.* The property was financed through American Home Mortgage via a deed of trust recorded with the Clark County Recorder as instrument no. 20070627:03315. *Id.* On February 7, 2012, the deed of trust was transferred to Citibank via an assignment of deed of trust recorded in the office of the Clark County Recorder as instrument no. 20120207:00443. *Id.*

Osborn became delinquent in the payment of the homeowner association dues owed to Cactus Hill Square Homeowners Association (the "HOA"). *Id.* On March 20, 2012, the HOA recorded a notice of delinquent assessment lien. *Id.* On September 11, 2012, Osborn failed to pay the HOA's assessment lien. *Id.* The HOA then recorded a notice of default and election to sell

real property to satisfy assessment lien. *Id.* The notice of default and election to sell was mailed by certified mail to Osborn and all parties of interest, including Citibank. *Id.*

After Osborn failed to pay the HOA's assessment lien, the HOA recorded a notice of trustee's sale. *Id.* This notice was mailed to all interested parties, including Osborn and Citibank. *Id.*

The initial HOA foreclosure sale was set for July 17, 2013, but the sale was postponed to April 16, 2014, and then again to May 21, 2014. *Id.* On May 21, 2014, the property was sold at foreclosure auction to Nevada Property Holdings, LLC for $21,000.00. *Id.* On June 12, 2014, My Home Now acquired title to the property via quitclaim deed from Nevada Property Holdings, LLC for $27,333.00. *Id.* The quitclaim deed was recorded with the Clark County Recorder. *Id.*

On November 26, 2014, My Home Now filed the underlying complaint against Citibank and Osborn seeking quiet title/declaratory relief, unjust enrichment, and injunctive relief. (ECF No. 1). My Home Now and Citibank filed counter motions for summary judgment. (ECF Nos. 35, 37).

On April 14, 2016, this court denied, without prejudice, My Home Now and Citibank's motions for summary judgment. (ECF No. 41). The court instructed Citibank to comply with Fed. R. Civ. P. 5.1(a)(1)(B) and file a notice of constitutional question with the Nevada attorney general's office. *Id.* Citibank failed to comply. *Id.* After waiting a reasonable time, My Home Now filed a notice of constitutional question with the attorney general's office. *Id.*

In advance of the attorney general's office opining on the constitutionality of NRS 116, the Nevada Supreme Court issued an opinion in *Saticoy Bay LLC Series 350 Durango 104 v. Wells Fargo Home Mortgage, a Division of Wells Fargo Bank, N.A.*, 113 Nev. Adv. Op. 5, 388 P.3d 970 (Nev. 2017) holding that NRS 116 does not violate due process if there is no state actor. *Id.* Accordingly, on June 15, 2017, My New Home renewed its summary judgment motion. (ECF No. 45).

In the instant motions, My Home Now moves for summary judgment as to its claim against Citibank for declaratory relief and quiet title. *Id.*

. . .

## II. Legal Standard

The Federal Rules of Civil Procedure allow summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

For purposes of summary judgment, disputed factual issues should be construed in favor of the non-moving party. *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990). However, to be entitled to a denial of summary judgment, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." *Id.*

In determining summary judgment, a court applies a burden-shifting analysis. The moving party must first satisfy its initial burden. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

By contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the non-moving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith*

*Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).

In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

### III. Discussion

In My Home Now's motion, it contends that summary judgment in its favor is proper because, *inter alia*, the foreclosure sale extinguished Citibank's deed of trust pursuant to NRS 116.3116 and *SFR Investments*. (ECF No. 45). My Home Now further contends that the foreclosure sale should not be set aside because the price paid at the foreclosure sale was commercially reasonable, Citibank has not shown fraud, unfairness, or oppression as outlined in *Shadow Wood Homeowners Assoc. v. N.Y. Cmty. Bancorp., Inc.*, 366 P.3d 1105 (Nev. 2016) ("*Shadow Wood*"), Citibank failed to tender the super-priority portion of the lien, and because there was no due process violation. (ECF No. 45). The court agrees.

Conversely, Citibank argues summary judgment should be granted in its favor because NRS 116's opt-in notice scheme was ruled facially unconstitutional by *Bourne Valley Court Trust v. Wells Fargo Bank, N.A.*, 832 F.3d 1154 (9th Cir. 2016), the grossly inadequate sale price paid

James C. Mahan
U.S. District Judge

- 4 -

for the property in comparison to its fair market value renders the foreclosure sale void, and because the Nevada Supreme Court's decision in *SFR Investments Pool 1, LLC v. U.S. Bank, N.A.*, 130 Nev. Adv. Op. 75, 334 P.3d 408 (Nev. 2014) is not retroactive to HOA sales conducted before the court's decision. (ECF No. 48).

Under Nevada law, "[a]n action may be brought by any person against another who claims an estate or interest in real property, adverse to the person bringing the action for the purpose of determining such adverse claim." Nev. Rev. Stat. § 40.010. "A plea to quiet title does not require any particular elements, but each party must plead and prove his or her own claim to the property in question and a plaintiff's right to relief therefore depends on superiority of title." *Chapman v. Deutsche Bank Nat'l Trust Co.*, 302 P.3d 1103, 1106 (Nev. 2013) (citations and internal quotation marks omitted). Therefore, for claimant to succeed on its quiet title action, it needs to show that its claim to the property is superior to all others. *See Breliant v. Preferred Equities Corp.*, 918 P.2d 314, 318 (Nev. 1996) ("In a quiet title action, the burden of proof rests with the plaintiff to prove good title in himself.").

Section 116.3116(1) of the NRS gives an HOA a lien on its homeowners' residences for unpaid assessments and fines. Nev. Rev. Stat. § 116.3116(1). Moreover, NRS 116.3116(2) gives priority to that HOA lien over all other liens and encumbrances with limited exceptions—such as "[a] first security interest on the unit recorded before the date on which the assessment sought to be enforced became delinquent." Nev. Rev. Stat. § 116.3116(2)(b).

The statute then carves out a partial exception to subparagraph (2)(b)'s exception for first security interests. *See* Nev. Rev. Stat. § 116.3116(2). In *SFR Investment Pool 1 v. U.S. Bank*, the Nevada Supreme Court provided the following explanation:

> As to first deeds of trust, NRS 116.3116(2) thus splits an HOA lien into two pieces, a superpriority piece and a subpriority piece. The superpriority piece, consisting of the last nine months of unpaid HOA dues and maintenance and nuisance-abatement charges, is "prior to" a first deed of trust. The subpriority piece, consisting of all other HOA fees or assessments, is subordinate to a first deed of trust.

334 P.3d 408, 411 (Nev. 2014) ("*SFR Investments*").

Chapter 116 of the Nevada Revised Statutes permits an HOA to enforce its superpriority lien by nonjudicial foreclosure sale. *Id*. at 415. Thus, "NRS 116.3116(2) provides an HOA a true

superpriority lien, proper foreclosure of which will extinguish a first deed of trust." *Id.* at 419; *see also* Nev. Rev. Stat. § 116.31162(1) (providing that "the association may foreclose its lien by sale" upon compliance with the statutory notice and timing rules).

Subsection (1) of NRS 116.31166 provides that the recitals in a deed made pursuant to NRS 116.31164 of the following are conclusive proof of the matters recited:

> (a) Default, the mailing of the notice of delinquent assessment, and the recording of the notice of default and election to sell;
> (b) The elapsing of the 90 days; and
> (c) The giving of notice of sale[.]

Nev. Rev. Stat. § 116.31166(1)(a)–(c).[1] "The 'conclusive' recitals concern default, notice, and publication of the [notice of sale], all statutory prerequisites to a valid HOA lien foreclosure sale as stated in NRS 116.31162 through NRS 116.31164, the sections that immediately precede and give context to NRS 116.31166." *Shadow Wood Homeowners Assoc. v. N.Y. Cmty. Bancorp., Inc.*, 366 P.3d 1105, 1110 (Nev. 2016) ("*Shadow Wood*").

Based on *Shadow Wood*, the recitals in the trustee's deed upon sale are conclusive evidence that the foreclosure lien statutes were complied with—*i.e.*, that the foreclosure sale was proper. *See id.*; *see also Nationstar Mortg., LLC v. SFR Investments Pool 1, LLC*, No. 70653, 2017 WL 1423938, at *2 (Nev. App. Apr. 17, 2017) ("And because the recitals were conclusive evidence, the district court did not err in finding that no genuine issues of material fact remained regarding whether the foreclosure sale was proper and granting summary judgment in favor of SFR."). Therefore, pursuant to *SFR Investments*, NRS 116.3116, and the recorded trustee's deed upon sale in favor of My Home Now, the foreclosure sale was proper and extinguished the first deed of trust.

---

[1] The statute further provides as follows:

> 2. Such a deed containing those recitals is conclusive against the unit's former owner, his or her heirs and assigns, and all other persons. The receipt for the purchase money contained in such a deed is sufficient to discharge the purchaser from obligation to see to the proper application of the purchase money.
>
> 3. The sale of a unit pursuant to NRS 116.31162, 116.31163 and 116.31164 vests in the purchaser the title of the unit's owner without equity or right of redemption.

Nev. Rev. Stat. § 116.31166(2)–(3).

Notwithstanding, the court retains the equitable authority to consider quiet title actions when a HOA's foreclosure deed contains statutorily conclusive recitals. *See Shadow Wood Homeowners Assoc.*, 366 P.3d at 1112 ("When sitting in equity . . . courts must consider the entirety of the circumstances that bear upon the equities. This includes considering the status and actions of all parties involved, including whether an innocent party may be harmed by granting the desired relief."). Accordingly, to withstand summary judgment in My Home Now's favor, Citibank must raise colorable equitable challenges to the foreclosure sale or set forth evidence demonstrating fraud, unfairness, or oppression.

In its motion for summary judgment, Citibank sets forth the following relevant arguments: (1) the foreclosure sale is invalid because NRS Chapter 116 is facially unconstitutional pursuant to *Bourne Valley Court Trust v. Wells Fargo Bank, N.A.*, 832 F.3d 1154 (9th Cir. 2016), *cert. denied*, No. 16-1208, 2017 WL 1300223 (U.S. June 26, 2017) ("*Bourne Valley*"); (2) the foreclosure sale was commercially unreasonable; (3) My Home Now is not a bona fide purchaser; and (4) *SFR Investments* should not be applied retroactively. (ECF No. 38). The court will address each in turn.

While the court will analyze Citibank's equitable challenges regarding its quiet title, the court notes that the failure to utilize legal remedies makes granting equitable remedies unlikely. *See Las Vegas Valley Water Dist. v. Curtis Park Manor Water Users Ass'n*, 646 P.2d 549, 551 (Nev. 1982) (declining to allow equitable relief because an adequate remedy existed at law). Simply ignoring legal remedies does not open the door to equitable relief.

### 1. *Due Process*

Citibank contends that *Bourne Valley* renders any factual issues concerning actual notice as irrelevant. (ECF No. 48). Citibank thus maintains that it need only "show that the foreclosure and extinguishment of Citibank's rights occurred pursuant to NRS 116." (ECF No. 48).

Citibank has failed to show that *Bourne Valley* is applicable to its case. Despite Citibank's erroneous interpretation to the contrary, *Bourne Valley* did not hold that the entire foreclosure statute was facially unconstitutional. At issue in *Bourne Valley* was the constitutionality of the "opt-in" provision of NRS Chapter 116, not the statute in its entirety. Specifically, the Ninth

Circuit held that NRS 116.3116's "opt-in" notice scheme, which required a HOA to alert a mortgage lender that it intended to foreclose only if the lender had affirmatively requested notice, facially violated mortgage lenders' constitutional due process rights. *Bourne Valley*, 832 F.3d at 1157–58. As identified in *Bourne Valley*, NRS 116.31163(2)'s "opt-in" provision unconstitutionally shifted the notice burden to holders of the property interest at risk—not NRS Chapter 116 in general. *See id.* at 1158.

Further, the holding in *Bourne Valley* provides little support for Citibank as Citibank's contentions are not predicated on an unconstitutional shift of the notice burden, which required it to "opt in" to receive notice. Citibank does not argue that it necessarily lacked notice, actual or otherwise, of the event that affected the deed of trust (*i.e.*, the foreclosure sale). Rather, Citibank argues My Home Now is unable to produce evidence Citibank received the notices of sale. While Citibank concedes notice was sent, it argues that under NRS 116.311635, the HOA is required to request a return receipt when sending notice of a foreclosure sale. (ECF No. 48). My Home Now's inability to produce such a return receipt renders the sale improper on due process grounds. *Id.*

My Home Now offers undisputed evidence Citibank was provided notice of both the default and the notice of sale. (ECF No. 45). Both notices were mailed to Citibank at the address on record with the Clark County recorder. *Id.* The notices were also published and posted. *Id.* My Home Now argues service by mail is complete upon mailing, not receipt, and proof of receipt is not required under Nevada law. *Hankins v. Administrator of Veterans' Affairs*, 92 Nev. 578, 580; 555 P.2d 483, 484 (1976). The court agrees. Uncontroverted proof of mailing to the address on record is sufficient to placate due process concerns.

Citibank also contests the validity of the foreclosure sale as a result of its successive postponements, of which only oral notice was provided by the HOA. (ECF No. 48). Citibank was only unaware of the postponed foreclosure sale because it chose not to attend the original sale on April 16, 2014 in the first place. (ECF No. 45). Assuming all interested parties will be in attendance, Nevada law permits up to three oral postponements of a foreclosure sale. NRS 107.082(2); 107.082(1). Because the sale was re-scheduled for a different date, but at the same time and at the same location, the HOA was obligated only to orally notify those in attendance.

*Id.* As such, the two oral postponements of the foreclosure sale did not implicate due process concerns. If anything, the postponements of the foreclosure sale theoretically benefited Citibank, as it afforded Citibank additional time to employ legal remedies to impede the sale, such as making a tender offer, filing a temporary restraining order, or preliminary injunction.

Furthermore, Citibank confuses constitutionally mandated notice with the notices required to conduct a valid foreclosure sale. Due process does not require actual notice. *Jones v. Flowers*, 547 U.S. 220, 226 (2006). Rather, it requires notice "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *see also Bourne Valley*, 832 F.3d at 1158.

"[T]he Due Process Clause protects only against deprivation of existing interests in life, liberty, or property." *Serra v. Lappin*, 600 F.3d 1191, 1196 (9th Cir. 2010); *see also, e.g.*, *Spears v. Spears*, 596 P.2d 210, 212 (Nev. 1979) ("The rule is well established that one who is not prejudiced by the operation of a statute cannot question its validity."). To establish a procedural due process claim, a claimant must show "(1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections." *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir. 1998).

Accordingly, Citibank's challenge based on due process and *Bourne Valley* fails, and Citibank's motion for summary judgment will be denied as it relates to these grounds.

### *2. Failure to Make Tender*

Citibank makes no argument it tendered any amount of money to the HOA to pay the super-priority portion of the lien in advance of the foreclosure sale.

Under NRS 116.31166(1), the holder of a first deed of trust may pay off the super-priority portion of an HOA lien to prevent the foreclosure sale from extinguishing that security interest. *See* Nev. Rev. Stat. § 116.31166(1); *see also SFR Investments*, 334 P.3d at 414 ("But as a junior lienholder, U.S. Bank could have paid off the SHHOA lien to avert loss of its security . . . ."); *see also, e.g.*, *7912 Limbwood Ct. Trust v. Wells Fargo Bank, N.A., et al.*, 979 F. Supp. 2d 1142, 1149 (D. Nev. 2013) ("If junior lienholders want to avoid this result, they readily can preserve their

James C. Mahan
U.S. District Judge

- 9 -

security interests by buying out the senior lienholder's interest." (citing *Carillo v. Valley Bank of Nev.*, 734 P.2d 724, 725 (Nev. 1987); *Keever v. Nicholas Beers Co.*, 611 P.2d 1079, 1083 (Nev. 1980))).

The notice of default recorded on September 11, 2012, set forth an amount due. (ECF No. 38-4). Had Citibank paid the amount set forth in the notice of default, the HOA's interest would have been subordinate to the first deed of trust. *See* Nev. Rev. Stat. § 116.31166(1). Citibank's failure to do so further supports granting summary judgment in My Home Now's favor.

### 3. *Commercial Reasonability*

Citibank argues that the court should grant its motion because the foreclosure sale for approximately 15% of the property's fair market value and 17.9% of the property's tax value is grossly inadequate and because Citibank can establish evidence of fraud, unfairness, or oppression. (ECF No. 48). However, Citibank overlooks the reality of the foreclosure process. The amount of the lien—not the fair market value of the property—is what typically sets the sales price.

Citibank further argues that the *Shadow Wood* court adopted the restatement approach, quoting the opinion as holding that "[w]hile gross inadequacy cannot be precisely defined in terms of a specific percentage of fair market value, generally a court is warranted in invalidating a sale where the price is less than 20 percent of fair market value." (ECF No. 38 at 18) (emphasis omitted).

NRS 116.3116 codifies the Uniform Common Interest Ownership Act ("UCIOA") in Nevada. *See* Nev. Rev. Stat. § 116.001 ("This chapter may be cited as the Uniform Common-Interest Ownership Act"); *see also SFR Investments*, 334 P.3d at 410. Numerous courts have interpreted the UCIOA and NRS 116.3116 as imposing a commercial reasonableness standard on foreclosure of association liens.[2]

---

[2] *See, e.g.*, *Bayview Loan Servicing, LLC v. Alessi & Koenig, LLC*, 962 F. Supp. 2d 1222, 1229 (D. Nev. 2013) ("[T]he sale for $10,000 of a Property that was worth $176,000 in 2004, and which was probably worth somewhat more than half as much when sold at the foreclosure sale, raises serious doubts as to commercial reasonableness."); *SFR Investments*, 334 P.3d at 418 n.6 (noting bank's argument that purchase at association foreclosure sale was not commercially reasonable); *Thunder Props., Inc. v. Wood*, No. 3:14-cv-00068-RCJ-WGC, 2014 WL 6608836, at *2 (D. Nev. Nov. 19, 2014) (concluding that purchase price of "less than 2% of the amounts of the deed of trust" established commercial unreasonableness "almost conclusively"); *Rainbow Bend Homeowners Ass'n v. Wilder*, No. 3:13-cv-00007-RCJ-VPC, 2014 WL 132439, at *2 (D. Nev. Jan. 10, 2014) (deciding case on other grounds but noting that "the purchase of a residential

In *Shadow Wood*, the Nevada Supreme Court held that an HOA's foreclosure sale may be set aside under a court's equitable powers notwithstanding any recitals on the foreclosure deed where there is a "grossly inadequate" sales price and "fraud, unfairness, or oppression." 366 P.3d at 1110; *see also Nationstar Mortg., LLC v. SFR Invs. Pool 1, LLC*, 184 F. Supp. 3d 853, 857–58 (D. Nev. 2016). In other words, "demonstrating that an association sold a property at its foreclosure sale for an inadequate price is not enough to set aside that sale; there must also be a showing of fraud, unfairness, or oppression." *Id*. at 1112; *see also Long v. Towne*, 639 P.2d 528, 530 (Nev. 1982) ("Mere inadequacy of price is not sufficient to justify setting aside a foreclosure sale, absent a showing of fraud, unfairness or oppression." (citing *Golden v. Tomiyasu*, 387 P.2d 989, 995 (Nev. 1963) (stating that, while a power-of-sale foreclosure may not be set aside for mere inadequacy of price, it may be if the price is grossly inadequate and there is "in addition proof of some element of fraud, unfairness, or oppression as accounts for and brings about the inadequacy of price" (internal quotation omitted)))).

Despite Citibank's assertion to the contrary, the *Shadow Wood* court did not adopt the restatement. In fact, nothing in *Shadow Wood* suggests that the Nevada Supreme Court's adopted, or had the intention to adopt, the restatement. *Compare Shadow Wood*, 366 P.3d at 1112–13 (citing the restatement as secondary authority to warrant use of the 20% threshold test for grossly inadequate sales price), *with St. James Village, Inc. v. Cunningham*, 210 P.3d 190, 213 (Nev. 2009) (explicitly adopting § 4.8 of the Restatement in specific circumstances); *Foster v. Costco Wholesale Corp.*, 291 P.3d 150, 153 (Nev. 2012) ("[W]e adopt the rule set forth in the Restatement (Third) of Torts: Physical and Emotional Harm section 51."); *Cucinotta v. Deloitte & Touche, LLP*, 302 P.3d 1099, 1102 (Nev. 2013) (affirmatively adopting the Restatement (Second) of Torts section 592A). Because Nevada courts have not adopted the relevant section(s) of the restatement at issue here, the *Long* test, which requires a showing of fraud, unfairness, or oppression in addition to a grossly inadequate sale price to set aside a foreclosure sale, controls. *See* 639 P.2d at 530.

---

property free and clear of all encumbrances for the price of delinquent HOA dues would raise grave doubts as to the commercial reasonableness of the sale under Nevada law"); *Will v. Mill Condo. Owners' Ass'n*, 848 A.2d 336, 340 (Vt. 2004) (discussing commercial reasonableness standard and concluding that "the UCIOA does provide for this additional layer of protection").

Nevada has not clearly defined what constitutes "unfairness" in determining commercial reasonableness. The few Nevada cases that have discussed commercial reasonableness state, "every aspect of the disposition, including the method, manner, time, place, and terms, must be commercially reasonable." *Levers v. Rio King Land & Inv. Co.*, 560 P.2d 917, 920 (Nev. 1977). This includes "quality of the publicity, the price obtained at the auction, [and] the number of bidders in attendance." *Dennison v. Allen Grp. Leasing Corp.*, 871 P.2d 288, 291 (Nev. 1994) (citing *Savage Constr. v. Challenge–Cook*, 714 P.2d 573, 574 (Nev. 1986)).

Nevertheless, Citibank fails to set forth sufficient evidence to show fraud, unfairness, or oppression so as to justify the setting aside of the foreclosure sale. Citibank relies on its repeated assertion that plaintiff's failure to produce evidence that Citibank actually received notice of the sale is evidence of unfairness. Citibank argues that because the sale price is substantially below fair market value of the property, "very slight additional evidence of unfairness or irregularity is sufficient to authorize the granting of the relief sought." *Golden v. Tomiyasu*, 79 Nev. 509, 515, 387 P.2d 989, 995 (1963). However, as discussed in the previous section, proof of mailing is sufficient to satisfy the notice requirement under NRS 116. Further, Citibank alleges only that My Home Now does not have proof of receipt, not that Citibank did not in fact receive notice. The court finds this distinction dispositive.

Citibank also argues the oral postponement of the sale evidences unfairness and irregularity. It asserts the HOA did not properly postpone the sale because My Home Now could not produce any documents stating as such. As previously discussed, under NRS 107.082(1), a foreclosure sale can be continued orally for up to three times before a new notice of sale is required to be issued and recorded. *JED Property, LLC v. Coastline RE Holdings NV Corp.*, 131 Nev. Adv. Op. 11, 343 P.3d 1239, 1241 (Nev. 2015). Here, the HOA only postponed the sale twice. Accordingly, the HOA was only required to provide oral notice of the postponement. The exact nature of an oral communication is that it is not in written form. The fact that My Home Now is unable to produce a written document memorializing the oral postponement does not evince unfairness or irregularity.

1    Lastly, Citibank contends that section 7.8 and 7.9 of the HOA's CC&Rs operated to prevent the foreclosure sale from conveying an interest not subject to the deed of trust. (ECF No. 48). This exact argument was addressed and rejected by the court in *SFR Investments Pool 1, LLC v. U.S. Bank N.A.*, 130 Nev. Adv. Op. 75, 334 P.3d 408, 418-18 (2014). These sections of the CC&Rs do not preserve Citibank's first deed of trust.

Accordingly, Citibank's commercial reasonability argument fails as a matter of law as it failed to set forth sufficient evidence of fraud, unfairness, or oppression. *See, e.g.*, *Nationstar Mortg., LLC*, No. 70653, 2017 WL 1423938, at *3 n.2 ("Sale price alone, however, is never enough to demonstrate that the sale was commercially unreasonable; rather, the party challenging the sale must also make a showing of fraud, unfairness, or oppression that brought about the low sale price.").

### 4. Bona Fide Purchaser Status

Because the court concludes that Citibank failed to properly raise any equitable challenges to the foreclosure sale, the court need not address Citibank's argument that My Home Now was not a bona fide purchaser for value. *See, e.g.*, *Id.* at *3 n.3.

### 5. Retroactivity

Citibank contends that *SFR Investments* should not be applied retroactively. (ECF No. 38 at 23).

This court has consistently held that *SFR Investments* applies retroactively, and the Nevada Supreme Court has recently confirmed this court's position. *K&P Homes v. Christiana Trust*, 133 Nev. Adv. Op. 51 (Nev. July 27, 2017). Accordingly, Citibank's contention fails.

## IV.  Conclusion

In light of the foregoing, Citibank has failed to set forth a sufficient equitable challenge to the foreclosure sale. Therefore, Citibank's cross-motion for summary judgment (ECF No. 48) on its quiet title and declaratory relief claims against My Home Now will be denied.

Further, My Home Now has sufficiently shown that it is entitled to summary judgment (ECF No. 45) on its quiet title and declaratory relief claims against Citibank. Pursuant to *SFR Investments*, NRS Chapter 116, and the trustee's deed upon sale, the foreclosure sale extinguished

the deed of trust. Citibank has failed to raise any genuine issues to preclude summary judgment in My Home Now's favor. Therefore, the court will grant My Home Now's motion for summary judgment (ECF No. 45).

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that My Home Now's motion for summary judgment (ECF No. 45) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that Citibank's cross-motion for summary judgment (ECF No. 48) be, and the same hereby is, DENIED.

The clerk is instructed to enter judgment accordingly and close the case.

DATED February 7, 2018.

_____
UNITED STATES DISTRICT JUDGE